A07A0938. LAUKAITIS v. BASADRE.
(650 SE2d 724)

PHIPPS, Judge.

Maryann Laukaitis was driving on an interstate highway when her car malfunctioned, forcing her to maneuver it off the roadway into the left emergency lane next to the median. After Laukaitis had exited the car, an approaching truck operated by Francisco Basadre collided with the back of the car, causing it to move forward and strike her. Laukaitis brought this personal injury action against Basadre, claiming that the collision had been caused by his common law negligence and numerous traffic violations.

At trial, the jury returned a $275,000 verdict in favor of Laukaitis. But after the trial court entered judgment on the verdict, Basadre filed a motion for new trial. And the court granted the motion, finding that it had erred in submitting the issue of attorney fees to the jury and that Laukaitis had repeatedly violated the court's order on Basadre's motion in limine concerning Laukaitis's condition and worldly circumstances. On retrial, the jury returned a verdict in favor of Basadre. Laukaitis appeals the trial court's denial of her motion for new trial. Finding merit in each of Laukaitis's claims of error, we reverse.

1. Laukaitis contends that the trial court erred by admitting evidence of prior DUI charges against her.

In this case, there was no evidence that either Laukaitis or Basadre was under the influence of alcohol or any drug at the time of the collision. Yet while cross-examining Laukaitis during her deposition, defense counsel, alluding to Laukaitis's interrogatory responses, asked her how many "DUI charges" she had had since the collision. Laukaitis responded, "Two." Counsel then asked, "And you had how many before our accident." Laukaitis answered, "Less than five." Counsel later asked whether "these DUIs" with which she had been "charged" were drug-related or alcohol-related. Laukaitis answered, "Alcohol, yeah. All alcohol. Yeah."

Thus, in her deposition, Laukaitis admitted to having been charged with DUI multiple times. Laukaitis, however, moved in limine to exclude any evidence that she had previously been "convicted" of DUI on the ground that no certified copies of any such convictions had been listed in the pretrial order. But after Basadre represented that Laukaitis had admitted in her deposition that she had numerous prior DUI "convictions," the court ruled that Laukaitis could be impeached with her deposition testimony if, at trial, she denied using alcohol. On a separate motion in limine by Laukaitis to exclude any evidence of drug or alcohol abuse by her, the court ruled that evidence of drug or alcohol abuse by Laukaitis could be admitted if the defense submitted evidence that cognitive impairments Laukaitis claimed to have been caused by the collision could have been caused by alcohol or drug abuse. Shortly before Laukaitis testified, the court clarified its earlier rulings by stating that Basadre could not admit evidence that Laukaitis had been merely arrested for or accused of DUI unless she opened the door by testifying that she had never been charged with DUI.

At trial, Dr. Damond Logsdon, the neuropsychologist who evaluated and treated Laukaitis, testified that he had diagnosed her as suffering from traumatic brain injury and that he attributed her condition to the accident in this case. On cross-examination by Basadre, Logsdon acknowledged that loss of memory such as that experienced by Laukaitis can also be caused by intake of toxins present in alcohol and drugs. Basadre then elicited testimony from Logsdon showing that in evaluating Laukaitis he had asked her whether she was currently using any alcohol or illegal substance, that she had said no, that he had also asked her whether she had ever been hospitalized for psychiatric or substance abuse problems, and that she had also said no.

During cross-examination, defense counsel asked Laukaitis whether she had said when taken to the hospital that she did not drink or use any illicit drugs. Laukaitis responded that although she drank

moderately, she did not have a drinking problem and did not use any illicit drugs. Counsel then asked Laukaitis whether it was true that, prior to this automobile accident, she "had four DUI's." Although her attorney objected, Laukaitis answered the question, "No. No." After hearing argument of counsel outside the presence of the jury, the court determined that Laukaitis's trial testimony opened the door to impeachment with the admissions she had made in her deposition, ruling that "to state at one point, 'no alcohol' and at another point 'moderate use of alcohol' definitely opens the door where the plaintiff had admitted earlier that she had as many as six DUI's." In front of the jury, counsel then used selected quotes from Laukaitis's deposition in an attempt to show that she had admitted to having had two "DUIs" since the accident in this case and less than five before this accident even though, at trial, she continued to deny that she had a drinking problem.

A witness may be impeached in any one of the methods set forth in OCGA §§ 24-9-82 through 24-9-84.1, by disproving facts testified to by him, by previous contradictory statements, evidence of general bad character, and proof of conviction of certain crimes.[1] In addition, under OCGA § 24-9-68, a witness may be impeached for bias, prejudice, or motive.[2] In Georgia, however, we have a rule, strictly applied, "that a witness cannot be discredited even by his own testimony that he has been convicted of a [crime]; it is necessary to introduce an authorized copy of the record of the court in which he was convicted."[3] A corollary to this rule is that while a witness may be discredited by proof of a crime, it is not competent to discredit him by showing that he has been arrested for, confined for, or even indicted for such an offense.[4]

But if a person's arrest for a crime were somehow material regardless of whether he actually had been convicted of the crime, or if a person's conviction of a particular crime became material without considering whether it was a credibility-impeaching crime under Georgia law,[5] it would seem that impeachment of the witness with evidence of the arrest or conviction would be permissible notwithstanding the party's inability to produce a certified copy of the criminal conviction.

[1] See *McCarty v. State*, 139 Ga. App. 101, 102 (1) (227 SE2d 898) (1976).

[2] See Green, Ga. Law of Evidence (5th ed.), § 137, p. 310.

[3] *Rolland v. State*, 235 Ga. 808, 811 (221 SE2d 582) (1976) (citations and punctuation omitted).

[4] *McCarty*, supra at 103.

[5] See OCGA § 24-9-84.1, as amended beginning in 2005.

Yet in *McCarty v. State*,[6] the defendant sought to impeach the state's principal witness, an informant, by showing that the informant had been motivated to set up the defendant because the informant was in trouble with law enforcement authorities. This court found that to be an improper method of impeachment because the witness had not been convicted of any crime and the defense thus could not produce a certified copy of any conviction. And in *Strickland v. State*,[7] the defendant was convicted of simple battery after getting into a fight with her husband's ex-wife while her husband was picking up his daughter for a weekend visit. On direct examination, the defendant testified that after the fight her husband's ex-wife had agreed to let him keep the daughter for a couple of weeks. On cross-examination, the prosecutor sought to impeach the defendant by asking whether a warrant had been issued requiring her husband to return the daughter. This court held that this was not a proper method of impeachment under the rule that conviction impeaches and accusation does not. The court further recognized, however, that the subject under inquiry was wholly immaterial to the defendant's guilt of simple battery and thus could not be used for impeachment.

Here, Laukaitis was properly questioned as to whether she had a drinking or drug problem. But defense counsel was allowed to impeach her answers to those questions with her deposition testimony by erroneously suggesting that in her deposition Laukaitis had admitted to having previously been convicted of DUI rather than merely arrested or charged with that offense. Impeachment of the witness on this subject was not proper. Although common sense would suggest that multiple DUI arrests provide some indication of a drinking or drug problem on the part of the arrestee, our law does not countenance proof of commission of an act by evidence that a person has been arrested for or charged with the act even multiple times. For these reasons, the trial court erred in permitting Laukaitis to be impeached at trial with her deposition testimony. And although this evidence was admitted based on its relevance to the issue of damages, we find a substantial likelihood that it could have prejudiced the jury against Laukaitis as to the question of liability in this particular case.[8]

2. Laukaitis contends that the court erred in admitting testimony by the investigating police officer about charges filed against her in traffic court.

---

[6] Supra.

[7] Supra.

[8] Cf. *Leo v. Williams*, 207 Ga. App. 321, 322 (428 SE2d 108) (1993).

At trial, the investigating officer testified that he had charged Laukaitis with impeding the flow of traffic because Basadre claimed that the rear of her car was partially in the roadway at the time of the collision. The court erred in overruling Laukaitis's objection to that testimony. "We have 'consistently held inadmissible evidence of any traffic court initiation or disposition of a case against the parties to a collision unless the party has entered a guilty plea in traffic court, thereby admitting liability.' "[9] No evidence of any such plea was offered here.

3. Laukaitis contends that the court erred in excluding an admission by the physician who treated her in the hospital emergency room immediately following the collision.

Laukaitis claimed that the collision caused her to suffer a lumbar soft tissue injury. The emergency room physician deposed, however, that the x-rays and CAT scan that he took of her showed no such injury. Laukaitis sought to admit deposition testimony elicited from the physician on cross-examination that it was possible that the soft tissue injury did not manifest itself until after the x-rays and CAT scan were taken. The court ruled that testimony inadmissible, under the rule that medical testimony as to the mere possibility of a causal relation between a given event and a subsequent injury will not establish the causal relationship,[10] and that an expert's opinion regarding causation must therefore be based, at the least, on the determination that there was a reasonable probability that the negligence caused the injury.[11] This ruling was also in error, because the issue here was whether the radiological studies' failure to detect the injury necessarily excluded its existence and not whether the collision caused the injury.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 10, 2007 —
RECONSIDERATION DENIED AUGUST 9, 2007.

*Linley Jones*, for appellant.

---

[9] *Eubanks v. Waldron*, 263 Ga. App. 75 (587 SE2d 253) (2003) (footnote omitted); compare *Felton v. White*, 197 Ga. App. 367 (1) (398 SE2d 425) (1990) (police officer with investigative training and experience in automobile collisions may express his opinion on a given state of facts as to how an accident happened).

When defense counsel later asked the officer about other contributing factors chargeable to Laukaitis, he replied unresponsively that she had no proof of insurance. The court, however, correctly sustained Laukaitis's objection to that testimony.

[10] *Hodson v. Mawson*, 227 Ga. App. 490, 492 (4) (489 SE2d 855) (1997).

[11] *Zwiren v. Thompson*, 276 Ga. 498, 501 (578 SE2d 862) (2003).

*Greer, Klosik, Daugherty & Swank, John F. Daugherty, Robert J. McCune,* for appellee.